## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-0767

WENDY K. BROCK, an individual,

Plaintiff

v.

JEFFERSON HILLS CORPORATION, d/b/a JEFFERSON HILLS, INC,
a Colorado nonprofit corporation,

Defendant

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW the Plaintiff, Wendy K. Brock ("Ms. Brock"), by and through her attorneys, Miller & Law, PC, and for her Complaint against the Defendant, Jefferson Hills Corporation d/b/a Jefferson Hills, Inc ("JHI," the "Company," or "Defendant"), states as follows:

## NATURE OF THE ACTION

This action is brought to redress JHI's violation of: (i) the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 – 12117 ("ADA"); (ii) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII") and (iii) 42 U.S.C. §1981 ("Section 1981"). Specifically, the Plaintiff alleges that JHI engaged in unlawful employment practices on the basis of her disability and her race or color, denied her reasonable requests for accommodations related to her disability, and retaliated against Ms. Brock for engaging in protected activity (including by renewing her requests for reasonable accommodations related to her disability) by creating and escalating a hostile work environment and singling her out for disparate treatment, quickly culminating in the constructive termination of Ms. Brock's employment, all in violation of the ADA, Title VII and Section 1981.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1343; Title II of the ADA, 42 U.S.C. § 12133; Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(j) and 42 U.S.C. §1981.

2.      The unlawful employment practices and defamatory acts alleged herein were committed within the jurisdictional boundaries of the United States District Court for the District of Colorado and venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

## ADMINISTRATIVE PREREQUISTIES

3.      Prior to filing this Complaint, Plaintiff complied with all procedural prerequisites for bringing this lawsuit.  She timely filed a charge of employment discrimination against JHI with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the subject discrimination and retaliation.

4.      Plaintiff was issued a Notice of Right to Sue by the EEOC with respect to her charge of employment discrimination against JHI that was dated September 2, 2020.

5.      The parties then entered into multiple tolling agreements that extended Plaintiff's 90-day window to commence litigation of her claims.

6.      The filing date of this Complaint is within 90 days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC, as that window has been mutually extended by the parties through March 15, 2021.

7.    As this Complaint has been filed within the 90-day period following her receipt of the Notice of Right to Sue, as mutually extended by the parties, Plaintiff has satisfied all procedural prerequisites for suing JHI in federal court under 42 U.S.C. §2000e-5(f)(1).

## PARTIES

8.    Ms. Brock is an individual resident of Colorado with a residential address of 14152 E. Tennessee Ave. #2245, Aurora, Colorado 80012.

9.    JHI is a Colorado corporation, with its headquarters located at 421 Zang Street, Lakewood, Colorado 80228.  JHI employs more than 15 employees.

## GENERAL ALLEGATIONS

10.    JHI is a not-for-profit residential child care facility providing intensive assessment, therapeutic and program services to youth with severe emotional and behavioral problems.

11.    JHI operates two facilities: (i) a facility in Lakewood, Colorado, where JHI operates a Crisis Stabilization Unit for children/youth ages 5–21 (the "Lakewood Facility"), and (ii) a facility in Aurora, Colorado, where Ms. Brock was employed, which is a staff secure residential facility offering services to youth ages 13–21 who are in the child welfare and/or youth corrections systems (the "Aurora Facility").

12.    JHI is licensed by the Colorado Department of Human Services as a Residential Child Care Facility ("RCCF") and is contracted by the Colorado Department of Youth Services ("DYS") for its Aurora programs.

13.    JHI claims that it follows the RCCF licensing regulations and complies with DYS contractual requirements.

14.    Ms. Brock began working at JHI in December 2010 as the Supervisor for the Girls

Unit.

15.     Ms. Brock is African-American.

16.     Ms. Brock has a disability, in that she has morbid obesity that is caused by a psychological disorder.

17.     Ms. Brock's disability substantially limits one or more of her major life activities and/or major bodily functions.

18.     JHI perceives Ms. Brock to have a disability.

19.     Ms. Brock's disability does not allow her to move as quickly as other employees.

20.     Ms. Brock has the requisite qualifications to perform and was able to perform the essential functions of the job for which she was hired at JHI with reasonable accommodation.

21.     Without explanation, JHI demoted Ms. Brock to Acting Supervisor for the Girls Unit in October 2016.

22.     At the time of her unexplained demotion, Ms. Brock was performing her job satisfactorily.

23.     At the time of her unexplained demotion, Ms. Brock had neither been issued any formal write-ups by JHI, nor had her supervisor identified any concerns with her performance.

24.     Ms. Brock reported her concerns regarding the demotion to JHI, complaining that the demotion was based on her disability and the fact that she does not walk as well as her coworkers.

25.     In connection with the demotion, JHI informed Ms. Brock that she would need to "reapply" for her position that she had held for six years.

26.     When Ms. Brock inquired of JHI why she needed to reapply for her own job, JHI refused to provide an answer to her question.

27. In fact, JHI's request that Ms. Brock "reapply" for her position was a ruse, as JHI had already made the decision to demote Ms. Brock to a different position at the time of its request.

28. When Ms. Brock inquired of JHI why she was being demoted, JHI refused to provide an answer to her question.

29. Subsequently, however, Tracy Belford, a Supervisor of the Glacier Unit at JHI, revealed to Ms. Brock that JHI's Unit Supervisor, Cheryl Martin, had admitted that she had demoted Ms. Brock because "she needed someone who could walk better."

30. Upon information and belief, JHI took no action in response to Ms. Brock's complaint of discrimination.

31. Beginning in March 2019, JHI commenced a pattern of systematically terminating its employees of color who were employed at the Aurora Facility and/or transferring such employees to the Lakewood Facility; JHI turned its focus to Ms. Brock beginning in July 2019.

32. In July 2019, a team meeting was held during which JHI's Director announced to the staff that all employees who had a disability or limited mobility would need to be transferred to the Lakewood Facility.

33. Notwithstanding this announcement, there were at least four Caucasian females who have disabilities whom JHI did not require to transfer to the Lakewood Facility.

34. JHI nevertheless insisted to Ms. Brock that she likely would be transferred to the Lakewood Facility.

35. Between December 2010 and July 2019, JHI honored Ms. Brock's reasonable requests for accommodation of her disability in each of the following ways:

   a. By allowing her to park her vehicle closer to the Aurora Facility, to provide easier and shorter access to the building, an accommodation that JHI had granted from December 2010 through July 16, 2019;

b. By allowing Ms. Brock to use manual time sheets (called Schedule Adjustment forms) to enter her time, rather than using the fingerprint time clock, which was located at the other end of the Aurora Facility from the entrance where Ms. Brock was parking her car, an accommodation that JHI had granted from December 20, 2016 through July 16, 2019;

c. By relieving Ms. Brock of the requirement to walk the halls and monitor the lunchroom or classrooms, an accommodation that JHI had granted from December 20, 2016 through July 16, 2019;

d. By not enforcing a previous job requirement (which ceased to exist as of 2017 due to changes to applicable DYS regulations and/or guidance that she be able to perform crisis prevention intervention ("CPI") with respect to the restraint of residents by taking them to the ground or the floor, an accommodation that JHI had granted from December 20, 2016 through 2017; and

e. By allowing her to take the CPR practical test with the mannequin on a table, an accommodation that JHI had granted from December 2010 through July 2019.

36.    On July 16, 2019 JHI informed Ms. Brock that it could not accommodate her disability in the foregoing ways.

37.    JHI attributed its abrupt change of position regarding Ms. Brock's accommodations to the closure of two residential units; according to JHI, it could no longer relieve Ms. Brock of certain "essential job functions" that it had previously allowed her not to perform.

38.    JHI claims that it had only accommodated Ms. Brock's disability while there were "an adequate number of fulltime, regular staff in the building to keep all youth and staff safe should the need for a physical management or situation requiring CPR occur."

39.    JHI's stated explanations for not accommodating Ms. Brock's disability as of July 16, 2019 were false; these explanations were merely pretext for discrimination.

40.    When Ms. Brock showed up to her shift on July 16, 2019, she was informed by the receptionist that she had to move her car because JHI's Director did not want Ms. Brock's vehicle in the traffic circle by the front door of the Aurora Facility.

41.    JHI maintained that it was no longer possible for other employees to leave their

jobs to park Ms. Brock's car and leave the unit out of required staff ratios.

42.     Notwithstanding JHI's explanations, there were no such "required staff ratios" that were implicated by the parking arrangement for Ms. Brock that had existed for almost nine years.

43.     As of July 16, 2019, JHI required Ms. Brock to clock in and out from the fingerprint time clock on the far side of the building, and to park in the designated handicap area.

44.     JHI wrongly accused Ms. Brock of falsifying her manual time sheets; according to JHI, Ms. Brock had been leaving work earlier than she reported on her time sheets, which left JHI "without the required coverage ratios to keep youth and staff safe."

45.     In fact, Ms. Brock completed a full 9.5 hours of actual service time for each and every shift that she worked at JHI; she never took her allotted 15-minute breaks during the middle of her shifts, and instead had been allowed by the management of the Aurora Facility throughout her employment to leave the building for the day approximately 30 minutes before the official end of her shift, in recognition of the fact that she was not taking her breaks earlier in her shifts.

46.     JHI falsely claims that it determined in July 2019 that it was necessary to have Ms. Brock use the fingerprint time clock "to eliminate the inaccurate time reporting and gaps in staffing due to Ms. Brock leaving work early."

47.     JHI also maintained, as of July 16, 2019 that it was "unacceptable" for Ms. Brock to remain at a fixed location rather than monitoring students in the lunch area and classrooms, given the reduction in JHI's on-duty staff.

48.     JHI instructed Ms. Brock that without a request for reasonable accommodation from Ms. Brock's doctors, she would be required to accompany youth to the cafeteria, walk the hallways and do room checks, and perform all of the essential duties of her job.

49.     JHI's stated rationale for requiring Ms. Brock to monitor students in the lunch area

and classrooms in the absence of a doctor's request for reasonable accommodation was false; there were no actual changes in staffing or DYS requirements that necessitated such a modification, and JHI continued to accommodate Caucasian employees with disabilities in this fashion without requiring those employees to provide a doctor's request for reasonable accommodation.

50.     JHI further claimed in July 2019 that it was "unacceptable" moving forward to have any staff members like Ms. Brock who were unable to perform CPI, because JHI "could not afford to schedule employees in the residential unit who could not intervene in the event of a crisis to keep other youth and staff safe."

51.     JHI's stated rationale regarding CPI was false; Ms. Brock had passed her annual CPI credentialing every year of her employment at JHI until 2019, and although she was out of compliance as of July 2019, there were multiple Caucasian staff members who also were out of CPI compliance at that time whom JHI did not immediately require to come into compliance.

52.     JHI further focused in July 2019 on Ms. Brock's delinquency in completing state-required CPR training; her certification had expired at the end of May 2019.

53.     JHI required Ms. Brock to immediately correct her CPR re-training even though there were multiple Caucasian staff members who also were out of CPR compliance at that time whom JHI did not immediately require to come into compliance.

54.     As part of her CPR re-training, JHI forced Ms. Brock to perform CPR on a mannequin that had been placed on the floor, instead of allowing Ms. Brock to perform CPR on a mannequin that was placed on a table, as it had previously allowed her to do.

55.     There were available means by which JHI could have continued to reasonably accommodate Ms. Brock's disability after July 2019 without undue burden or expense.

56.     JHI demanded that Ms. Brock grant written permission for her doctor to release

medical information to JHI in July 2019, to allow JHI to determine whether she qualified for the essential job functions of her position.

57.     JHI maintained that it could no longer assume that Ms. Brock was disabled, and that it needed to be provided with a request for reasonable accommodation from her doctor by July 31, 2019, to allow JHI to determine the extent of any underlying medical conditions and Ms. Brock's limitations "so that it could determine how best to accommodate Ms. Brock in light of [JHI's] new circumstances."

58.     JHI's statements to Ms. Brock were false, in that the pretextual rationale that JHI had offered for not accommodating Ms. Brock's disability after July 16, 2019 had nothing to do with a need for such accommodations to be substantiated by a doctor.

59.     JHI also falsely claimed in July 2019 that it had never previously accommodated Ms. Brock's disabilities.

60.     When Ms. Brock renewed her request for reasonable accommodation of her disability in July 2019 in the same fashion that JHI had accommodated her during the preceding years, JHI then began retaliating against her in multiple ways.

61.     In addition to the foregoing actions, JHI falsely accused Ms. Brock of continuing to park in her old parking spot after July 16, 2019.

62.     JHI sent Ms. Brock home on August 6, 2019, allegedly because she was out of compliance with respect to CPR and CPI.

63.     On August 12, 2019 JHI issued a directive that everyone who out of CPR compliance would be terminated; upon information and belief, however, that directive was specifically targeted to Ms. Brock.

64.     Realizing that she had become a permanent target of JHI as a result of her disability, her renewed requests for continued reasonable accommodation, her race and color and her complaints of mistreatment, and facing the immense stress, hostility and enormity of the situation, Ms. Brock had no choice but to resign her employment.

65.     Ms. Brock notified JHI of her resignation on August 12, 2019.

66.     As a direct and proximate result of JHI's illegal acts, Ms. Brock has suffered severe financial and emotional distress.

## CLAIMS FOR RELIEF

### First Claim For Relief
### Discrimination in Violation of the ADA

67.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

68.     Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8), in that (i) she has morbid obesity caused by a psychological disorder, which substantially limits one or more of her major life activities and/or major bodily functions, (ii) JHI perceives her to have a disability, (iii) she has the requisite qualifications to perform and can perform the essential functions of the job for which she was hired through reasonable accommodation, and (iv) she held and desired to continue to hold her job with JHI.

69.     Defendant is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

70.     Plaintiff was an employee of the Defendant within the meaning of 42 U.S.C. § 12111(4).

71.     Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

72.     Defendant is liable for the acts and/or omissions of its agents and employees.

73.     Defendant's discriminatory actions included, but were not limited to: (i) deliberately targeting Plaintiff for mistreatment and harassment as a result of her disability, (ii) limiting, segregating, or classifying Plaintiff in a way that adversely affected her opportunities or status because of her disability within the meaning of § 12112(b)(1); (iii) utilizing standards, criteria, or methods of administration that had the effect of discrimination on the basis of disability within the meaning of § 12112(b)(3)(A); (iv) failing to make reasonable accommodations for the known physical limitations of Plaintiff, an otherwise qualified individual employee with a disability, despite the fact that doing so would not have imposed an undue hardship on the operation of the Defendant's business within the meaning of § 12112(b)(5)(A); and/or (v) denying employment opportunities to Plaintiff based on Defendant's need to make reasonable accommodations for her impairments within the meaning of § 12112(b)(5)(A).

74.     As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

75.     Plaintiff has been damaged by Defendant's violation of the ADA inasmuch as she has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

76.     Plaintiff is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

77.     Plaintiff is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

### Second Claim For Relief
### Retaliation in Violation of Title VII and the ADA

78.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

79.     Ms. Brock engaged in protected activities (i) by complaining to JHI of discrimination, and (ii) by seeking reasonable accommodation for her disability.

80.     As described, *infra,* Ms. Brock was subjected to retaliation by JHI through numerous adverse actions as a result of engaging in the foregoing protected activities, including through being constructively terminated from her employment.

81.     JHI's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Ms. Brock's federally protected rights.

82.     As a consequence of JHI's illegal conduct, Ms. Brock suffered, and continues to suffer, irreparable injury and damages.

### Third Claim For Relief
### Discrimination Based on Race or Color in Violation of Title VII

83.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

84.     Plaintiff satisfactorily performed the functions and requirements of her job at all times relevant to this Complaint.

85.     Defendant, either directly or by and through its agents, discriminated against Plaintiff because of her race or color.

86.     Defendant is liable for the acts and/or omissions of its agents and employees.

87.     During Plaintiff's employment, Defendant, and its agents, engaged in unlawful discriminatory employment practices against Plaintiff with respect to the terms and conditions of Plaintiff's employment based on her race or color.

88.     Defendant's unlawful employment practices include, without limitation, JHI's direct perpetuation of discrimination and harassment of Plaintiff, Defendant's failure to protect Plaintiff from discrimination and harassment at the hands of management, Defendant's disparate treatment of Plaintiff from at least four similarly-situated disabled Caucasian colleagues, and Defendant's constructive termination of the Plaintiff, all of which denied Plaintiff equal terms and conditions of employment and otherwise adversely affected her employment status because of her race or color.

89.     In particular, as set forth *infra,* JHI never required the comparator employees to provide doctor's notes to substantiate their disabilities and their need for reasonable accommodation, JHI did not threaten to transfer those employees to the Lakewood Facility, JHI did not insist upon those employees immediately coming into CPR/CPI compliance, and JHI continued to reasonably accommodate the disabilities of those employees as it could have easily continued to accommodate Ms. Brock.

90.     Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

91.     As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

**Fourth Claim For Relief**
**Violation of 42 U.S.C. §1981 and Retaliation**

92.     Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

93.     Plaintiff is African-American and thus a member of a protected class under 42 U.S.C. §1981.

94.     Defendant, by and through the conduct of their employees and agents, have unlawfully denied Plaintiff the benefits, privileges, promotional opportunities, and terms and conditions of her employment due to her race.

95.     Plaintiff performed the functions of her job competently and was qualified for her longstanding position at all relevant times.

96.     Defendant treated Plaintiff less favorably than at least four similarly-situated Caucasian employees, as set forth *infra*.

97.     Plaintiff was subjected to adverse treatment because of her race.

98.     Plaintiff's race was a motivating factor in Defendant's mistreatment of Plaintiff, including the constructive termination of her employment.

99.     Defendant's asserted reasons for its actions were merely pretext for illegal discrimination and retaliation by Defendant and/or its agents.

100.     Defendant's unlawful employment practices complained of in the foregoing paragraphs were undertaken intentionally, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

101.     As a consequence of Defendant's illegal conduct, Plaintiff suffered, and continues to suffer, irreparable injury and damages.

**Additional Claims For Relief**

102.     Plaintiff reserves the right to add additional claims after discovery.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant, and award Plaintiff the following relief, to the fullest extent allowed by law:

i.    Actual monetary damages for all injuries suffered by Plaintiff in an amount to be determined at trial, including but not limited to, damages for lost past and future wages and employment benefits;

ii.   Punitive damages on all claims allowed by law and in an amount to be determined at trial;

iii.  Attorneys' fees and costs, including expert witness fees, on all claims allowed by law;

iv.   Pre- and post-judgment interest at the highest lawful rate; and

v.    Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 15th day of March 2021.

MILLER & LAW, PC

**/s/ David J. Meretta**
David J. Meretta, No. 44409
1900 W. Littleton Blvd.
Littleton, CO 80120
(303) 722-6500
(303) 722-9270 fax
djm@millerandlaw.com

ATTORNEYS FOR PLAINTIFF